IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09 CV 3071 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| STATE OF ILLINOIS, DEPARTMENT ) | |
| OF CORRECTIONS, ROGER E. ) | |
| WALKER, JR., in his official and ) | |
| individual capacity, **DEBBIE DENNING,** ) | |
| in her official and individual capacity, and ) | |
| **MARY SIGLER,** in her official and ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Pamela Harris has filed a ten-count complaint against the State of Illinois, Department of Corrections ("IDOC"), and Roger E. Walker, Jr., Debbie Denning, and Mary Sigler in their official and individual capacities (collectively, "defendants"). Harris alleges racial discrimination and retaliation, equal protection and due process violations, chilling of her First Amendment rights, and retaliation under various federal and Illinois statutes and Illinois common law. Before the court is defendants' motion to transfer venue to the Central District of Illinois. For the following reasons, defendants' motion [#12] is denied.

## BACKGROUND

Harris, an African-American, worked for IDOC for sixteen and a half years until her termination on December 15, 2008. Initially a correctional officer, in 2004, she was promoted to Supervisor of the Jessie Ma Houston Adult Transition Center ("Jessie Ma Houston"), an IDOC

1

facility located in this district, in Dixmoor, Illinois. In April 2006, she was transferred to the Dwight Correctional Center ("the DCC"), an IDOC facility located in the Central District of Illinois. In June 2006, Harris was appointed Assistant Warden of Operations at the DCC. At all relevant times, Sigler was the Warden at the DCC, Denning was Deputy Director of IDOC's Women and Family Division, and Walker was the IDOC Director. Sigler and Denning are caucasian, while Walker is African-American. Sigler is now retired and resides in Wisconsin, Denning continues to work for IDOC in Decatur in the Central District, and Walker is retired and lives in Decatur.

Harris alleges that she was discriminated against after she reported an incident involving a correctional officer ("CO") kicking an inmate at the DCC and a coverup of the incident by Lt. Winters and CO Lynn Hodge to Sigler and Denning in December 2006. Harris contends that Sigler was displeased with the report, as Winters and Hodge were Sigler's friends. Harris alleges that her report prompted Sigler to investigate a report of an incident involving Harris and a different inmate at the DCC. Harris contends Sigler's actions made her working conditions difficult, leading her to complain of racially discriminatory actions at the DCC to Denning around February 20, 2007. Several days later, Harris alleges that Denning notified her that IDOC's Investigations and Intelligence Unit would not be investigating Harris's complaints. Harris then asked to speak to Rick Bard, IDOC's Chief of Operations and Denning's supervisor, about her complaints. On February 28, 2007, Sergio Molina, Walker's executive assistant, told Harris that she should report to Jessie Ma Houston on March 1, 2007, where she would be Assistant Supervisor of Operations. Harris alleges that no documentation states the reasons for the transfer but that Walker provided legislators with false reasons for the action.

2

Although working at Jessie Ma Houston, Harris contends that she continued to be supervised by Sigler and Denning. She alleges that all her paperwork and personnel approval actions were "funneled through the [DCC] so it would appear as though her position had not changed and so Defendants Sigler and Denning could continue to exert control over [her]." Compl. ¶ 36. On April 13, 2007, Harris alleges she received an oral reprimand from Denning for violating IDOC standards of conduct, stemming from the investigation Sigler initiated against her. On May 3, 2007, Harris met with Sigler and Joni Stahlman, the Reentry Manager for IDOC's Women and Family Services Division, at the DCC for a performance evaluation, where she received a rating of "acceptable" for her work from June 1, 2006 to June 1, 2007, allegedly lower than any other rating she had received while employed by IDOC. Harris also alleges that her state vehicle was reassigned in May 2007 to Toyia Sims, IDOC's Policy Advisor to the Director, that the governor's office did not act on complaints she made, and that she refused to campaign for a candidate running against State Representative Barbara Flynn Currie in late 2007 when asked by Sims.

In August 2007, Harris cross-filed a discrimination charge with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). Harris alleges that after IDOC received the IDHR charge, Walker appointed Duane Tucker the Assistant Warden of Operations at the DCC, the position Harris allegedly continued to occupy. She further contends that she was placed on administrative leave on December 1, 2008 after indicating she would continue to pursue her discrimination charge. On December 15, 2008, she received a letter signed by Walker stating that her employment with IDOC was terminated, allegedly with no explanation. Harris then filed a second charge of discrimination with the

IDHR, alleging her termination was in retaliation for filing her initial IDHR discrimination charge. The EEOC provided her with a right to sue notice on April 21, 2009.

## LEGAL STANDARD

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a practical matter, "[t]he moving party must show that (1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev* v. *Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007) (citing *Bryant* v. *ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999)). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin., Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). Since the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, the decision to transfer is committed to the sound discretion of the trial court. *Coffey*, 796 F.2d at 219; *see also Van Dusen* v. *Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (noting that the remedial purpose of § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness"); *N. Shore Gas Co.* v. *Salomon Inc.*, 152 F.3d 642, 648 n.3 (7th Cir. 1998). Each factor should be given the appropriate weight under the circumstances of the case. *Gueorguiev*, 526 F. Supp. 2d at 856.

DISCUSSION

The parties do not argue that venue is improper in this district or the Central District of Illinois. Instead, the parties dispute whether transfer is warranted for the convenience of the parties and witnesses and whether transfer serves the interest of justice.

I.  Convenience of the Parties and Witnesses

Factors the court considers and weighs in evaluating the convenience of the parties and witnesses include (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (3) the convenience of the witnesses, and (4) the convenience of the parties in litigating in the respective forums. *See, e.g.*, *Brandon Apparel Group, Inc.* v. *Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999) (citations omitted).

A.  Plaintiff's Choice of Forum and the Situs of Material Events

Under § 1404(a), a plaintiff's choice of forum is generally entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Id.*; *see also United Air Lines, Inc.* v. *Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998) (unless the balance weighs strongly in favor of transfer, plaintiff's choice should not be disturbed). But "plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action . . . . In such a case, it becomes just one of many factors to be viewed by the Court when making its determination of convenience." *Hotel Constructors, Inc.* v. *Seagrave Corp.*, 543 F. Supp. 1048, 1050 (N.D. Ill. 1982) (citations omitted).

The Northern District is Harris's home forum. Defendants contend that her chosen forum is not entitled to deference, however, because it does not have a significant connection to the events underlying Harris's suit. Specifically, defendants contend that all material events took

5

place at the DCC or under the direction of individuals located in the Central District of Illinois and that the only contacts with this district are Harris's transfer to Jessie Ma Houston and the fact that Harris was terminated from her position there. Harris argues that the court should consider not only where the decisions involved in the suit occurred, but also where their effects were felt, citing *Cox* v. *Nat'l Football League*, No. 97 C 3741, 1997 WL 619839, at \*2–3 (N.D. Ill. Sept. 29, 1997) ("[A] court looks to where the decision *and actions concerning the employment practices* occurred."). As Harris worked in this district for eighteen months prior to her termination, during which time many of the complained of actions took place, Harris contends that much of the alleged conduct "occurred" in the Northern District.

Although the court acknowledges that Harris worked in this district for a greater portion of the time period covered by her complaint, it finds that the majority of the material events underlying her complaint occurred in the Central District. Harris alleges that the discrimination she was subjected to arose after she reported an incident at the DCC. The investigation into Harris's conduct and the oral reprimand she received involved her treatment of an inmate at the DCC. Harris's adverse performance review, although given while Harris was working in this district, occurred at the DCC and related mainly to her performance there. Harris alleges that her paperwork and personnel approval actions were processed through the DCC, so that Sigler and Denning could retain control over her. Even Harris's IDHR charge, made while working at Jessie Ma Houston and which she alleges led to her termination, focused on events that took place at the DCC or allegedly at Sigler's and Denning's behest, and not on other discriminatory acts she may have been subject to at Jessie Ma Houston. Thus, as the situs of the material events underlying Harris's complaint is the Central, not the Northern, District, Harris's choice of forum

will not be accorded substantial deference but will instead be considered as one factor weighing against transfer.

B. **Ease of Access to Sources of Proof**

Defendants argue that this factor points toward transfer, as all of Harris's personnel files and other relevant documents are in the Central District, either in Springfield or at the DCC. Harris argues, and the court agrees, that defendants have not demonstrated that these documents cannot be transported to this district. *See, e.g.*, *Boyd* v. *Snyder*, 44 F. Supp. 2d 966, 971 (N.D. Ill. 1999) ("The court agrees with plaintiffs that documents and records are easily transportable."). Thus, this factor weighs neither for nor against transfer.

C. **Convenience of the Witnesses**

"'The convenience of the witnesses is often viewed as the most important factor in the transfer balance.'" *Brandon Apparel,* 42 F. Supp. 2d at 834 (quoting *Rose* v. *Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). In evaluating this factor, the court considers the number of witnesses located in each forum and the nature, quality, and importance of their testimony. *See Rohde* v. *Cent. R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997) ("[T]he Court considers not only the number of witnesses located in each forum but also the nature and importance of their testimony. [The movant] bears the burden of establishing who [the] witnesses are, what their testimony will be, and how vital that testimony will be to the case") (citations omitted) (internal quotation marks omitted); *United Air Lines*, 8 F. Supp. 2d at 799; *Brandon Apparel*, 42 F. Supp. 2d at 834 ("[T]he court will not consider the convenience of unidentified witnesses"). The determination of venue should not depend on which party submits a longer witness list. *Brandon Apparel*, 42 F. Supp. 2d at 834.

7

Of the potential non-party witnesses identified in Harris's complaint, defendants focus on four: Joseph Burke, who is deceased; Molina and Stahlman, whose offices are in the Central District; and Sims, whose office is in this district. Harris responds that additional potential witnesses reside in this district who will have relevant information, particularly with respect to damages. These witnesses include her parents, pastor, legislator, and other unspecified friends and family members. Harris also contends that to demonstrate that she was subject to discrimination and retaliation, she will have to compare herself to others who hold the same type of position or report to the same supervisor. While Harris assumes these individuals will come from Jessie Ma Houston, defendants point out that the relevant acts of alleged discrimination and retaliation mainly involved her time and her supervisors at the DCC, which would necessitate comparison with DCC employees who had been under Sigler's supervision and presumably work or reside in the Central District. As neither side has clearly articulated its potential witnesses or the materiality of their testimony, however, the court cannot conclude that one forum is more convenient than the other for witnesses.

### D. Convenience of the Parties

In evaluating the convenience of the parties, the court considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel*, 42 F. Supp. 2d at 834. Harris is a resident of this district. IDOC has facilities throughout the state, with its main agency offices in Springfield and Chicago, leading to the conclusion that either forum would be equally convenient for it. Walker and Denning reside in the Central District, while Sigler is retired and lives in Wisconsin. While litigating in the Northern District may be inconvenient for some individual defendants, defendants have not shown that a transfer will do

8

more than "merely transform[ ] an inconvenience for one party into an inconvenience for the other party." *Chem. Waste Mgmt., Inc.* v. *Sims*, 870 F. Supp. 870, 876 (N.D. Ill. 1994) (citation omitted) (internal quotation marks omitted). Further, although the parties have not demonstrated that one side has a better ability to financially bear the expense, it appears that transferring the case to the Central District would be a greater financial burden on Harris than on defendants, as IDOC has offices and resources in both districts.[1] Thus, this factor weighs against transfer.

## II. Interests of Justice

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (citations omitted). Factors considered in this analysis involve the efficient administration of the court system, such as the likelihood of a speedy trial, feasibility of consolidation, and the familiarity of judges in each forum with applicable law. *Id.* at 221. The desirability of resolving controversies in their locale has also been cited as a factor. *See First Nat'l Bank* v. *El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006).

Defendants concede that the difference in the average time of disposition of cases in the two districts is negligible. Familiarity with federal and state law involved in this case is not an issue. Defendants argue that the Central District has a greater interest in the lawsuit as most of the conduct occurred there. Although the court has found this to be the case, the Northern

---

[1] As Harris points out, defendants' counsel, like Harris's, is based in this district. "The convenience and location of counsel have never been accorded weight in a transfer analysis." *Hemstreet* v. *Scan-Optics, Inc.*, No. 89 C 5937, 1990 WL 36703, at *4 (N.D. Ill. Mar. 9, 1990). Where, as here, no attorneys are located in the Central District, counsel's location seems to indicate that the Northern District is not necessarily inconvenient, but instead, in defendants' opinion, a less desirable forum in which to litigate these claims.

9

District also has an interest in seeing this controversy involving one of its residents resolved. Nonetheless, this factor weighs slightly in favor of transfer.

Considered as a whole, defendants have not met their burden of demonstrating that transfer to the Central District of Illinois is clearly more convenient. Only the situs of material events and the desirability of resolving controversies in their locale weigh in favor of transfer, making the balance of factors relatively equal. Thus, Harris's choice of forum is given deference and defendants' motion will be denied.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to transfer venue [#12] is denied.


Dated: January 12, 2010        Enter: _[signature]_

                                                 JOAN HUMPHREY LEFKOW
                                                 United States District Judge