**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| PAMELA HARRIS,<br>        Plaintiff,<br>v.<br><br>STATE OF ILLINOIS, DEPARTMENT OF CORRECTIONS, ET AL.<br>        Defendants. | Case No. 09-CV-3071<br><br>Judge Lefkow<br><br>Magistrate Judge Keys<br><br>**Jury Trial Demanded** |
|---|---|

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Pamela Harris, by and through her attorneys, opposes Defendants' Motion to Dismiss her First Amended Complaint (docket no. 24) as follows:

**INTRODUCTION**

Although Defendants title their motion as one to "dismiss Plaintiff's Second Amended Complaint," in reality Defendants seek only partial dismissal. Defendants acknowledge that Plaintiff's Title VII claim (Count II, race discrimination and retaliation against IDOC) and certain aspects of Plaintiff's federal law claims are proper. (Def. Mot. at 11) (acknowledging Harris states a claim against Walker); (Def. Mot. at 13) (not seeking dismissal of Count II).

Defendants' challenges to Plaintiff's other federal law claims ignore recent Seventh Circuit authority clarifying standards for immunity, ignore facts in the complaint and ask the Court to make improper factual determinations on issues like causation and "adverse employment action" based solely on the pleadings. Defendants also challenge Plaintiff's state law claims – primarily challenging jurisdiction by arguing sovereign immunity – without acknowledging recent legislative changes. As explained below, the State has waived immunity for all of Plaintiff's state statutory claims. Claims against the individual Defendants are proper

regardless. Thus, except as to those claims Plaintiff voluntarily withdraws, Defendants' motion should be denied in its entirety.

## STANDARD OF REVIEW

Defendants rely on *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1950-52 (2009), in arguing something beyond notice pleading is required under the federal rules. (Def. Mot. at 10). But the Supreme Court's recent decisions did not change notice pleading standards in this Circuit. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008) ("We also have cautioned, however, that *Bell Atlantic* must not be overread.") (internal quotation omitted); *Erickson v. Pardus*, -- U.S. --, 127 S.Ct. 2197, 2200 (2007) ("[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests'") (quoting *Twombley,* 127 S.Ct. at 1964)). Nor has the manner in which Plaintiff's pleading must be viewed at this stage changed. Here, the Court must take all as true and draw reasonable inferences in Plaintiff's favor. Applying these standards, Defendants' arguments fail.

## SUMMARY OF FACTS AND CLAIMS

Defendants gloss over broad sections of Plaintiff's complaint in making arguments regarding liability for individual Defendants and timeliness of aspects of Plaintiffs claims. For ease of reference, Plaintiff sets forth a brief summary of key facts in support of her claims, the claims she alleges and the Defendants associated with each claim:

| Count | Claims | Defendants |
|---|---|---|
| I | Race discrimination and retaliation – 42 U.S.C. § 1981 | All |
| II | Race discrimination and retaliation – Title VII | IDOC |
| III | Retaliation – Illinois Human Rights Act | IDOC |

| Count | Claims | Defendants |
|---|---|---|
| IV | Equal Protection – 42 U.S.C. § 1983 | All |
| V | Retaliation – State Officials and Employee Ethics Act | All |
| VI | Retaliation – Illinois Whistleblower Protection Act | All |
| IX [sic] | Retaliatory Discharge – Illinois Common Law | IDOC |

| Date | Events | Defendants |
|---|---|---|
| Early 2007 | Harris was accused of and investigated for allegedly locking an inmate in a holding cell for nearly 5 hours within weeks of reporting an assault incident against a different inmate; IDOC launched an internal investigation where IDOC was told that Sigler received reports of the assault incident and the IDOC concluded its internal investigation without findings or recommendation. (Am. Complt. ¶¶ 18-25). | Sigler & Denning |
| Feb. 28, 2007 | Harris was transferred from Dwight and demoted from Assistant Warden Operations to Assistant Supervisor of Operations within days of complaining about race discrimination, receiving an e-mail that her complaints would not be investigated and being denied permission to speak to Denning's supervisor about her race discrimination complaints (all within weeks of the early-2007 conduct described above). (Am. Complt. ¶¶ 27-36). | Sigler & Denning |
| April 13, 2007 | Harris received an oral reprimand for allegedly violating administration of discipline rules. (Am. Complt. ¶ 38). | Denning |
| May 3, 2007 | Harris received an inexplicable rating of "acceptable" on her performance evaluation, making her ineligible for a bonus. (Am. Complt. ¶¶ 41-44). | Sigler & Denning |
| May 11, 2007 | Harris's vehicle was taken from her and reassigned. (Am. Complt. ¶ 46). | IDOC |
| Nov. 2, 2007 | IDOC announced Duane Tucker will fill Harris's position at Dwight. (Am. Complt. ¶ 48). | Walker |

3

| Date | Events | Defendants |
|---|---|---|
| Dec. 1, 2008 | Harris was suspended inexplicably and locked out of the Houston facility within weeks of rejecting a proposal for resolving her discrimination charge. (Am. Complt. ¶ 53). | Sigler & Denning |
| Dec. 15, 2008 | Harris was terminated and "Defendant*s*' actual reason for terminating Ms. Harris's employment" was her "race" or protected activities. (Am. Complt. ¶ 1, 54-55). [1] | Walker, Sigler & Denning |

## ARGUMENT

I. **The First Amended Complaint States Claims Under Section 1981, Section 1983, The Fourteenth Amendment Equal Protection Clause And Title VII Against Some Or All Defendants.**

As noted, the Defendants implicitly acknowledge that Plaintiff's Title VII claim is valid. Defendants raise a number of objections to Plaintiff's remaining constitutional and federal claims. After the Defendants' objections are analyzed, the Plaintiff is left with a Title VII claim against the IDOC, and individual claims based on section 1981 and section 1983 against the individual defendants.

A. **Plaintiff's Section 1981 Claims Are Proper Against The Individual Defendants In Their Individual Capacities.**

Defendants contend that the Eleventh Amendment bars Plaintiff from suing the Illinois Department of Corrections *and* the individual defendants in their *official* capacities for damages or injunctive relief under section 1981. *See, e.g., Kroll v. Bd. Of Trustees of Univ. of Illinois*, 934 F.2d 904, 907-09 (7th Cir. 1991) (outlining immunity principles, but confirming that "[p]ersonal-capacity suits raise no eleventh amendment issues even though an official might have the requisite nexus to the state in order for his or her actions to be labeled state action")

The Eleventh Amendment is implicated only in actions "between a state and citizens of another state." Constitution, Article III, Section 2. The principle Defendants want to invoke is

---

[1] Plaintiff also alleges (without providing a date) that Defendant Walker provided false reasons to a legislator regarding the reasons for Ms. Harris's transfer. (Am. Complt. ¶ 52).

4

sovereign immunity. *See Mercado v. Dart*, --- F.3d --- (7th Cir. No. 09-3092 dec. April 28, 2010) (discussing "Eleventh Amendment Immunity" and sovereign immunity with respect to suit against Cook County Sheriff). In *Hans v. Louisiana*, 134 U. S 1 (1890), the Supreme Court ruled that the Eleventh Amendment reflects a broader principle of sovereign immunity. As explained by the Court in *Alden v. Maine*, 527 U.S. 706 (1999):

> [S]overeign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself....Nor can we conclude that the specific Article I powers delegated to Congress necessarily include, by virtue of the Necessary and Proper Clause or otherwise, the incidental authority to subject the States to private suits as a means of achieving objectives otherwise within the scope of the enumerated powers.

Section 1981 is based on the 13th Amendment, and not the 14th Amendment. *See Jones v Alfred H. Mayer Co.*, 392 U.S. 409 (1968) (42 U.S.C. § 1982, also derived from the 1866 Civil Rights Act). There is no indication that Congress has authorized section 1981 suits against state agencies. Nor is there any statute that waives the State's sovereign immunity with respect to actions brought by individuals against the Illinois Department of Corrections. Accordingly, Plaintiff concedes that she cannot maintain section 1981 claims against the IDOC or the individual Defendants in their official capacities.

Sigler, Denning and Walker also argue that Plaintiff's section 1981 claims against the individual defendants in their individual capacities should be dismissed or limited because there are insufficient allegations of personal involvement. (Def. Mot. at 8 )("Individual liability under§ 1981 or § 1983 must be predicated on personal involvement."). While Defendants are correct the law requires personal involvement, *see, e.g., Hildebrant v. Ill. Dep't of Natural Resources,* 347 F.3d 1014, 1039 (7th Cir. 2003), their claim that Plaintiff failed to allege their personal involvement does not withstand even a casual reading of the First Amended Complaint.

Plaintiff's table above and footnote below demonstrate Defendants' personal involvement.[2] Defendants would have this Court reject the applicable standards of review by not drawing the reasonable inferences in Plaintiff's favor that: (a) Plaintiff's termination – the reasons for which Defendants have ever explained – was in no way related to Sigler or Denning; (b) that Defendants Sigler and Denning were completely uninvolved in Harris's suspension (an act which, under applicable rules, requires approval of Defendant Sigler); and (c) that Defendants Sigler and Denning also were completely uninvolved in the hiring of Plaintiff's replacement, Duane Tucker. Respectfully, those are not reasonable inferences the Court can draw against Plaintiff based solely on the pleadings. The facts alleged clearly show Defendants' assertion that "Harris fails to put forth sufficient allegations showing that each individual defendant participated in the acts claims as discriminatory" is without merit.

---

[2] In ¶ 25, Plaintiff alleges that after reporting an inmate kicking incident and cover-up to Defendants Sigler and Denning, they initiated a bogus investigation against Plaintiff. In ¶ 26, Plaintiff alleges that Defendant Sigler altered the terms and conditions of Plaintiff's employment. In ¶ 27, Plaintiff alleges that she made complaints about alleged racial discrimination to Sigler and Denning and that Sigler authorized an investigation into one of them. In ¶ 28, Plaintiff recounts a conversation she had with Denning about another claim of different treatment based on race. In ¶29, Plaintiff recounts a conversation with Denning in which Denning acknowledged the racial difficulties at Dwight. In ¶ 30, Plaintiff alleges receiving an email indicating that none of her race discrimination complaints would be investigated. In ¶ 31, Plaintiff alleges that her requests to present her complaints to the IDOC Chief of Operations and then to Defendant Walker were denied by Denning. In ¶ 33, Plaintiff alleges that six days after her request to speak to Walker was rebuffed, Walker's Executive Assistant called to order to report to a different penal institution in two days. In ¶ 38, Plaintiff recounts that less than 45 days after being demoted to the Houston Correctional Facility, Defendant Denning issued her an oral reprimand for violating rules regarding the administration of discipline and for violating an Administrative Directive regarding IDOC standards of conduct, limiting her opportunities for advancement . In ¶¶ 42-45, Plaintiff alleges that even though she was now assigned to the Houston, Sigler and Denning controlled her paperwork and personnel actions and Sigler rated her performance "acceptable" precluding her from receiving a bonus. In ¶ 48, Plaintiff alleges Walker announced her replacement at Dwight. In ¶ 53, Plaintiff alleges she was suspended and "locked out" of the Houston facility, an act which could not have occurred without Sigler's approval. In ¶¶ 54-55, Plaintiff alleges Defendant Walker sent Plaintiff a letter terminating her employment and that Defendants reason for terminating her was based on retaliation or race.

Defendants Sigler and Denning also argue that Harris' section 1981 claim also fails because Harris does not allege that they participated in any adverse employment action. Whether conduct alleged constitutes an "adverse employment action" (like the issue of causation) is not an issue appropriately determined based solely on the pleadings. Regardless, Defendants' conception of adverse employment decision/action is overly restrictive. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

In *Herrnreiter v. Chicago Housing Authority*, 315 F.2d 742, 743-44 (2002), the Seventh Circuit established three broad categories of actionable conduct: (1) the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including, of course, as the limiting case, termination of employment; (2) a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted; and (3) the employee is not moved to a different job or the skill requirements of his present job is not altered, but the *conditions* in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment — an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet. As set forth above, however, Plaintiff's allegations against Defendants Sigler and Denning Sigler clearly fall within the bounds of these categories –

either by affecting her compensation, affecting her career prospects, or (through the transfer and demotion) creating a significantly negative alternation of her workplace environment.

Defendant Walker also argues Plaintiff fails to allege her race motivated Walker's decision to terminate her employment. (Def. Mot. at 11-12) (citing Am. Complt. ¶¶ 31-32, 53-54). But that claim is *expressly* contradicted by the pleadings. (Am. Complt. ¶ 55) ("Defendants' actual reason for terminating Ms. Harris's employment was in retaliation for her protected activities *and/or her race or color.*") (emphasis added). Thus, Defendants' motion to dismiss with regard to Plaintiff's section 1981 claims against Sigler, Denning and Walker in their individual capacities should be denied.

**B.     Plaintiff's Section 1983 Claims Are Proper Against The Individual Defendants In Their Individual Capacities.**

The IDOC is not a "state actor" as defined by Section 1983 and thus is not subject to suit. However, state officials are subject to suit in their individual capacity if they act under color of state law and deprive a plaintiff of rights secured by federal constitutional and, in some case, statutory law. *See, e.g., Willis v. University Health Serv.* 993 F.2d 837. 840 (11th Cir. 1993). So long as the federal right claimed to be violated is the Fourteenth Amendment right of equal protection (and not Title VII), and if the defendants are state actors, a Plaintiff can maintain a claim independent of Title VII. Defendants contend that because the statute of limitations for section 1983 is two years, most of the allegations against Sigler and Denning are time-barred. As noted above, however, Plaintiff alleges numerous facts relating to Sigler's Denning's and Walker's conduct within the actionable time period.

Regardless, the significance of Defendants' assertion is limited by the fact that the statute of limitations for Plaintiff's section 1981 claims is four years, *see Jones v. RR Donnelley & Sons Co.*, 541 U.S. 369 (2004), and, as Defendants correctly note, "[a]lthough section 1981 and Title

VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." (citing *McGowan v Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). Thus, irrespective of the merit of its argument, the individual defendants will still have to defend all the conduct alleged in the First Amended Complaint. For these reasons, Defendants' motion to dismiss Plaintiff's claims under section 1983 and the Fourteenth Amendment Equal Protection Clause should be denied.

  **II.**  **This Court May Properly Exercise Jurisdiction Over Plaintiff's Statutory State Law Claims Because Illinois Waived Sovereign Immunity And Permits Claims Against State Employees.**

  Defendants' arguments regarding Plaintiff's state law claims fare no better. Acknowledging sovereign immunity is not absolute, Defendants nonetheless argue all Plaintiff's state law claims must be dismissed because this Court lacks jurisdiction to hear them. (Def. Mot. at 4-5). Nowhere in its memorandum does Defendant argue that Plaintiff's state law claims are barred by the Eleventh Amendment. Instead, Defendant argues Defendants are immune from suit in *any* court but the Court of Claims. With the exception of Plaintiff's common law retaliatory discharge claim (which Plaintiff agrees the Court should dismiss without prejudice for refilling in the Court of Claims), Defendants' arguments are incorrect.

  In the Illinois Constitution of 1970 the defense of sovereign immunity was abolished "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, Art. XIII, § 4. Thus, absent an action by the legislature, the default rule established by the Constitution is that the State may be sued – sovereign immunity does not exist except where created by statute.

  Defendants rely heavily on the "State Lawsuit Immunity Act", 745 ILCS § 5/1, enacted in 2004. That statute says "[e]xcept as provided in [certain statutes including] … the State Officials and Employees Ethics Act [and] Section 1.5 of this Act [which includes Title VII, 42

9

U.S.C. § 2000-e5 *et seq.*], the State of Illinois shall not be made a defendant or party in any court." As explained below, subsequent actions by the General Assembly – including with respect to the Illinois Human Rights Act and Illinois Whistleblower Protection Act – authorized Plaintiff's statutory claims against the State.

Additionally, Illinois courts have explained, individual employees, managers and supervisors of the State accused of violating in violation of statutory or constitutional obligations are *not* entitled to immunity. *See Healy v. Vaupel et al.*, 133 Ill.2d 295, 308, 549 N.E.2d 1240 (1990)("Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law … and in these instances an action may be brought in circuit court"); *see also Wozniak v. Conry*, 288 Ill.App.3d 129, 134, 679 N.E.2d 1255 (1997) ("Whenever a state employee performs illegally, unconstitutionally *or* without authority, a suit still may be maintained against the employee in his individual capacity and does not constitute an action against the State of Illinois"); *see also Fritz v. Johnston*, 209 Ill.2d 302, 312 807 N.E.2d 461 (2004) (reversing dismissal and holding actions against state employees were not barred by sovereign immunity because employees were accused of violations of laws that applied "to all individuals, not merely state employees").

Thus, Plaintiff's claims against the individual Defendants – all of which allege that the individual Defendants violated state statutes – may properly proceed regardless of Defendants' claims of sovereign immunity.

### A. The State Waived Immunity To The Illinois Whistleblower Act By Expressly Permitting Suits Against The State And, Regardless, Plaintiff's Claims Against The Individual Defendants Are Proper.

Plaintiff asserts claims against all Defendants under the Illinois Whistleblower Protection Act (Count VI), which authorizes "a civil action against the employer for all relief necessary to

10

make the employee whole." 740 ILCS § 174/30. Defendants acknowledge (at p. 5) that the Whistleblower Act was amended to cover "acts by governmental entities" in 2008 (well after the 2004 Immunity Act). *See* 740 ILCS § 174/5. Specifically, effective January 1, 2008, the definition of "employer" was broadened to specifically include "a political subdivision of the State" and "any authority including a department, division, bureau, board, commission or other agency of these entities." *Id* (amended through Public Act 95-128, effective January 1, 2008) (available here: http://www.ilga.gov/legislation/publicacts/fulltext.asp?name=095-0128).

Because the Illinois legislature specifically amended the statute to permit civil actions against the State, the Court should permit Plaintiff's Illinois Whistleblower Protection Act claim to proceed against the State. Construing the statute otherwise would render the amendment a nullity and fail to give effect to the intent of the General Assembly, which here clearly sought to include the State as en entity subject to civil actions under the Illinois Whistleblower protection act. *See Boaguro v. County Officers Electoral Board*, 158 Ill.2d 391, 397 (1994) ("The primary rule of statutory interpretation, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature").

At a minimum, the claims must be allowed to proceed against the individual Defendants in their individual capacities. That same amendment added liability for "any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees" by including those individuals in the definition of an "employer" who can be subject to suit. *See* 740 ILCS § 174/5.

Defendants argue that the individual Defendants should be dismissed – either because they only committed acts prior the effective date of the amendment (January 1, 2008) or because the claim is actually a claim against the State. (Def. Mot. at 5). But, as set forth above, drawing

11

reasonable inferences in Plaintiffs' favor, Plaintiff's complaint alleges each of the individually named Defendants was directly involved in conduct in 2008 – her suspension and termination. Although acting "within the scope of his or her authority express or implied on behalf of the State," each individual Defendant acted unlawfully in violation of their statutory obligations under the Whistleblower Act. As explained above, because actions against the individual Defendants under these circumstances are not actions against the State, exercising supplemental jurisdiction over Plaintiff's Whistleblower Protection Act claims against the individual Defendants is entirely proper.

> **B.  The State Waived Immunity To Claims Under The Illinois Human Rights Act By Expressly Permitting Suits Against The State.**

As with the Whistleblower Act, the legislature also amended the Illinois Human Rights Act to permit charges filed after January 1, 2008 to be pursued in Court. Specifically, pursuant to amendments to the IHRA, charges filed after January 1, 2008 may form the basis of a complaint in court. *See* 775 ILCS § 5/7A-102(C)(4) & (K) (permitting a charging party to "commence a civil action in the appropriate circuit court" after dismissal of charges filed after the effective date of January 1, 2008) (P.A. 95-243 available here: http://www.ilga.gov/legislation/publicacts/96/096-0876.htm). Prior to that time, claims under the Illinois Human Rights Act – which defines "employer" to include "[t]he State and any political subdivision" (775 ILCS § 2-101(B)) – could only be pursued at the Illinois Human Rights Commission.[3]

By amending the statute to permit suits in court without excluding itself from the definition of "employer", the State waived any claims to immunity. Indeed, through the

---

[3] Thus, Defendants' claim "the IHRA divests courts of jurisdiction to hear civil rights violations" (Def. Mot. at 6) (internal quotation omitted) is baseless and Defendants' authority interpreting the pre-amendment version of the IHRA is unreliable.

amendment the State chose to subject itself to suits in court under the Illinois Human Rights Act – a statute akin to Title VII under which Plaintiff pursues claims of retaliation and discrimination. Holding otherwise would, again, fail to give effect to the meaning of the General Assembly's amendment authorizing filing IHRA claims in Court. Accordingly, Plaintiff's IHRA claims are not barred by sovereign immunity grounded in the Immunity Act.

      **C.**    **Plaintiffs' State Officials And Employees Ethics Act Claims Are Not Preempted By The Illinois Human Rights Act And, Regardless, Her Claims Against The Individual Defendants Are Proper.**

Defendants concede Plaintiff's claims under State Officials And Employees Ethics Act ("the Ethics Act") is not subject to claims of sovereign immunity. (Def. Mot. at 4) (identifying Ethics Act claims as exempt from the State Lawsuit Immunity Act). Instead, Defendants argue the Court lacks jurisdiction because Plaintiffs claims against Defendants are preempted by the IHRA.

Defendants' argument hinges entirely on the false premise that "Harris alleges only that she suffered retaliation as a result of complaints of discrimination." (Def. Mot. at 6). Plaintiff's complaint specifically alleges that she reported the assault of an inmate by a guard and that while participating in IDOC's internal investigation, she informed IDOC that Sigler and Denning received reports of the assault incident but covered it up. (Am. Complt. ¶¶ 18-26; 88-92). Plaintiff alleges she suffered retaliation because she reported the assault on an inmate and cover-up of that assault – both of which violate Illinois policy, regulation or statute. (Am. Complt. ¶ 21). Thus, Plaintiff's Ethics Act claims have a basis that is separate and distinct from – not inextricably linked to – her claims of discrimination and retaliation under the Illinois Human Rights Act (e.g., Defendants refusing to act after she was called a "jig" (short for jigaboo)).

13

As the Illinois Supreme Court recently explained, the IHRA only preempts actions that are "inextricably linked" to IHRA claims. *Blount v. Stroud*, 232 Ill.2d 302, 313, 904 N.E.2d 1 (2009). So long as the plaintiff can allege facts sufficient to establish the elements of her cause of action "without reference to the legal duties created by the [IHRA]," her claims are not preempted. *Id.* at 314-15 (refusing to find preemption even where the employee's protected activity in support of her common law retaliatory discharge claim "could be construed as retaliation for opposing unlawful discrimination"). Here, Plaintiff can meet all the elements of her cause of action under the Ethics Act without reference to Defendants' obligations not to discriminate or retaliate against her. She can show she was retaliated against as a result of reporting the assault on the inmate and resulting cover-up. *See* 5 ILCS § 430/15-20 (requiring only that Plaintiff show: (i) she disclosed or threatened to disclose to a supervisor or public body an activity of another State employee she reasonably believed is in violation of a law, rule or regulation, and (ii) that her conduct was a contributing factor in reprimand, discharge, suspension, demotion, denial of promotion or transfer, or change in the terms or conditions of employment). Thus, her Ethics Act claims against the State are not preempted.

Even if the Court finds Plaintiff's claims against Defendant IDOC preempted, the Court should permit Plaintiff's Ethics Act claims to proceed against the individual Defendants. Like the Whistleblower Act, the Ethics Act permits claims against individuals. *See* 5 ILCS 430/15-5 (defining "public body" to include a "State agency" and "any officer, employee, department agency or other division of any of the foregoing"); *see also Maes v. Folberg*, 504 F.Supp.2d 339, 349-51 (N.D. Ill. 2007) (denying motion to dismiss Ethics Act against individual despite being employed by state because individual could be liable for compensatory damages in his individual

capacity). Because the IHRA does not allow for liability against individuals, it cannot be interpreted to preempt Plaintiffs claims against the individual Defendants.

### III. The Court Should Direct Defendants IDOC And Walker To Answer Plaintiff's First Amended Complaint.

Defendants' conclusion (Def. Mot at 12) makes clear it does not seek dismissal of Count II, Plaintiff's Title VII claim. Defendants motion also makes clear Plaintiff's section 1981 claim against Defendant Walker can proceed in some form (Def. Mot. at 11). Yet those Defendants have not answered any allegation in Plaintiff's complaint. Plaintiff respectfully requests that the Court direct Defendants to answer the factual allegations in Plaintiff's complaint as expeditiously as possible so the parties' can initiate discovery.

### CONCLUSION

WHEREFORE, for the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss Plaintiff's First Amended Complaint except as to Count IX (Plaintiff's common law retaliatory discharge claim) and those aspects of Plaintiff's federal claims she concedes cannot go forward.

Respectfully submitted,

/s/ J. Bryan Wood

J. Bryan Wood
One of Plaintiff's Attorneys

| | |
|---|---|
| Robert Hodge | J. Bryan Wood (No. 6270845) |
| LAW OFFICE OF ROBERT HODGE | THE LAW OFFICE OF J. BRYAN WOOD |
| 36 S. Wabash Ave., Rm 1310 | 542 South Dearborn Street, Suite 610 |
| Chicago, IL 60603-2906 | Chicago, Illinois 60605 |
| Telephone: (312) 422-1707 | Telephone: (312) 545-1420 |
| Email: bhmingus@ameritech.net | Email: bryan@jbryanwoodlaw.com |

Electronically filed on May 20, 2010

## **CERTIFICATE OF SERVICE**

  The undersigned attorney certifies that the served a copy of the forgoing on all counsel of record for Defendants in this matter by filing it using ECF on May 20, 2010.

                   /s/ J. Bryan Wood