# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAMELA HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 CV 3071 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| STATE OF ILLINOIS, DEPARTMENT | ) |
| OF CORRECTIONS, ROGER E. | ) |
| WALKER, JR., DEBBIE DENNING, | ) |
| and MARY SIGLER, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Pamela Harris filed a seven-count amended complaint against the State of Illinois, Department of Corrections ("IDOC"), Roger E. Walker, Jr., Debbie Denning, and Mary Sigler (collectively, "defendants"). Harris alleges discrimination and retaliation on the basis of race and other protected activities in violation of various federal and state statutes and state common law.[1] Before the court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, defendants' motion [#24] is denied.

## BACKGROUND[2]

Harris, an African-American, worked for IDOC for sixteen and a half years prior to her termination on December 15, 2008. In 2004, she was promoted to Supervisor of the Jessie Ma Houston Adult Transition Center ("Jessie Ma Houston"), an IDOC facility in Dixmoor, Illinois.

---

[1] The court has original jurisdiction over Harris's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

[2] The facts are taken from the complaint and are presumed to be true for the purpose of resolving the pending motion.

In April 2006, at Denning's request, Harris was transferred to the Dwight Correctional Center (the "DCC"), an IDOC facility in Dwight, Illinois, where she became Acting Assistant Warden of Operations. In June 2006, Harris was appointed Assistant Warden of Operations. At all relevant times, Sigler was the Warden at the DCC, Denning was Deputy Director of IDOC's Women and Family Division, and Walker was the IDOC Director.

On December 21, 2006, Harris received a report from an African-American inmate, Heather Weeden, that she had been kicked by a Caucasian correctional officer ("CO"), Carol Gurgone.[3] Although Weeden had spoken to Lieutenant Winters and CO Lynn Hodge, both Caucasian, about the incident, they had advised her not to press the issue as they would not act on it. This was despite the fact that Gurgone admitted to kicking Weeden. Harris reported the incident and coverup to Sigler, who claimed not to have known about the incident.[4] Sigler did not like that Harris reported a coverup by Winters and Hodge, both friends of Sigler's. Harris also informed Denning of the incident by telephone. Denning requested that Harris submit an incident report, which she did. IDOC's Internal Investigation Department looked into the coverup. During this investigation, Sigler represented that Winters and Hodge had reported the incident to her, which was not the case. The investigation concluded in late January 2007 and confirmed that Gurgone had kicked Weeden. Gurgone was then locked out of the DCC on February 20, 2007 and eventually terminated. Once Weeden was transferred out of the DCC, however, Gurgone returned to work at the DCC with Sigler's, Denning's, and Walker's

---

[3] IDOC rules prohibit COs from assaulting inmates and using corporal punishment and unnecessary use of force.

[4] IDOC also has an Administrative Directive that requires the immediate reporting of serious incidents, including any time a CO makes physical contact with an inmate.

approval. Sometime after Harris reported the incident and coverup, Sigler and Denning initiated an investigation of an incident where Harris allegedly left an inmate in a holding cell at the DCC for nearly five hours. On February 20, 2007, Harris complained to Denning of being racially discriminated against at the DCC and about the discriminatory practices of others there. In particular, she complained of the handling of an investigation into a report by an African-American CO, Beatrice Brownfield, that a Caucasian CO, Renee Bantista, had called Harris a racial slur. She also complained that Gurgone was treated differently from Lt. Milton Luster, an African-American. Denning admitted to Harris that there was a problem at the DCC but that she was not sure how to address it.

On February 22, 2007, Denning notified Harris that IDOC's Investigations and Intelligence Unit would not be investigating Harris's complaints. Harris then asked to speak to Rick Bard, IDOC's Chief of Operations and Denning's supervisor, about her complaints. When told that Walker, not Bard, was now Denning's supervisor, Harris requested to speak with Walker, but this request was denied. On February 28, 2007, Harris was told by Sergio Molina, Walker's executive assistant, that she should report to Jessie Ma Houston on March 1, 2007 to assume the role of Assistant Supervisor of Operations. She was not provided with reasons for the transfer, although at some point Walker provided legislators with false reasons for Harris's transfer. The transfer was effectively a demotion, as she was now working under an individual she had previously supervised prior to her 2006 transfer to the DCC.

Although working at Jessie Ma Houston, Harris continued to be under Sigler's and Denning's supervision. All her paperwork and personnel approval actions were "funneled through the [DCC] so it would appear as though her position had not changed and so Defendants

Sigler and Denning could continue to exert control over [her]." Am. Compl. ¶ 45. On April 13, 2007, she received an oral reprimand from Denning for violating IDOC standards of conduct in leaving an inmate in a holding cell for nearly five hours. On May 3, 2007, Harris attended a performance review at the DCC with Sigler and Joni Stahlman, who is Caucasian and the Reentry Manager for IDOC's Women and Family Services Division. At this meeting, she received an "acceptable" rating for her work from June 1, 2006 to June 1, 2007, lower than any other rating she had received during her employment with IDOC. This rating made her ineligible for a bonus in 2007. In May 2007, Harris's state vehicle was reassigned to Toyia Sims, IDOC's Policy Advisor to the Director. In late 2007, Sims requested that Harris campaign for a candidate supported by then Governor Blagojevich running against State Representative Barbara Flynn Currie. Harris refused to do so.

In August 2007, Harris filed a charge with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation. After IDOC received the IDHR charge in October 2007, on November 2, 2007, Walker appointed Duane Tucker the Assistant Warden of Operations at the DCC, the position Harris continued to occupy.

On December 1, 2008, shortly after informing IDOC that she intended to continue prosecuting her IDHR charge, Harris was placed on administrative leave and locked out of Jessie Ma Houston. On December 15, 2008, she received a letter from Walker informing her that her employment with IDOC was terminated with no explanation. Harris then filed a second charge of discrimination with the IDHR. The EEOC provided her with a notice of the right to sue on April 21, 2009.

4

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999). "Where evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Id.* (quoting *United Transp. Union* v. *Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)) (internal citations omitted).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not

plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## DISCUSSION

### I. Federal Claims

Harris brings claims against all defendants for race discrimination and retaliation in violation of 42 U.S.C. § 1981 (Count I) and for violation of the Equal Protection Clause under 42 U.S.C. § 1983 (Count IV). She also brings a claim against IDOC for race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Count II). Defendants argue that only the Title VII claim and a circumscribed § 1981 claim against Walker are viable. Harris concedes that her § 1981 and § 1983 claims against IDOC and any claims against the individual defendants in their official capacities are not proper. Thus, they will be dismissed.

#### A. Personal Involvement

In order for an individual to be liable under § 1981 or § 1983, he or she must have been personally involved in the alleged constitutional violation. *See Hildebrandt* v. *Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *Daigre* v. *City of Harvey*, No. 04 CV 4224, 2009 WL 2371727, at *2 (N.D. Ill. July 30, 2009) (citing *Musikiwamba* v. *Essi, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985)). A defendant may be personally liable "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Hildebrandt*, 347 F.3d at 1039 (alteration in original) (quoting *Gentry* v. *Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Defendants argue that Harris's § 1981 and § 1983 claims against Sigler and Denning fail because she has not sufficiently alleged that the individual defendants were personally involved in any discriminatory actions. In doing so, defendants ignore the factual details of Harris's complaint. Harris has alleged that Sigler and Denning initiated an investigation into Harris's placement of an inmate in a holding cell for nearly five hours, making the terms and conditions of her employment increasingly difficult. Am. Compl. ¶¶ 25–26. She alleges that Denning gave her an oral reprimand as a result of this investigation, which limited her opportunities for advancement. *Id.* ¶¶ 38–39. Further, she contends that shortly after Harris asked Denning to speak to Walker about her complaints of race discrimination, she was demoted. *Id.* ¶¶ 31, 33. Despite being transferred to another IDOC facility, Harris alleges that Sigler and Denning continued to oversee her paperwork and all personnel approval actions. *Id.* ¶ 45. She claims that she was suspended shortly after indicating that she would continue prosecuting her IDHR charge, *id.* ¶ 53, and that, while Walker signed her letter of termination, all defendants were involved in terminating her employment, *id.* ¶¶ 54–55. Although Harris may not be able to establish Sigler and Denning's personal involvement in each instance of retaliation or discrimination she complains of, drawing all inferences in her favor at this stage, she has sufficiently alleged that Sigler and Denning were involved in some capacity in the actions at issue.

**B.      Adverse Employment Action**

In addition to personal involvement, Harris must allege that she was subjected to an adverse employment action. *McGowan* v. *Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009); *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). An adverse employment action

may involve an employee's termination, a change in an employee's compensation or other financial terms of employment, "a nominally lateral transfer with no change in financial terms [that] significantly reduces the employee's career prospects," or a "significantly negative alteration in [the employee's] workplace environment." *Herrnreiter* v. *Chicago Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002). Harris alleges the following: that the terms and conditions of her employment became more difficult after she reported the kicking incident and coverup; that she was demoted, an action that "drastically changed [her] terms and conditions of employment as well as her job duties by reducing the number of individuals she supervised and the number of inmates, buildings and geographic area under her supervision," Am. Compl. ¶ 36, and limited her opportunities for advancement; that she received an oral reprimand, which limited her opportunities for advancement; that her performance review was lower than ever before, which made her ineligible for a bonus; and that she was suspended and ultimately terminated.

Defendants do not argue that her demotion, suspension, or termination are not adverse employment actions, although they challenge the time between Harris's protected activity and the suspension and termination. It is true that the suspension and termination did occur over a year after Harris filed her initial IDHR charge, which, after discovery, may prove to be too remote to support a retaliation claim. *See Oest* v. *Ill. Dep't of Corr.*, 240 F.3d 605, 616 & n.8 (7th Cir. 2001) ("[W]e have permitted retaliation charges to proceed in the face of long intervals only when additional circumstances demonstrate that an employer's acts might not be legitimate."). Making this determination at this stage is inappropriate, particularly as defendants

ignore that Harris also alleges that the suspension and termination occurred shortly after she informed IDOC that she was continuing to prosecute the charge.

The denial of a bonus is not an adverse employment action unless Harris was automatically entitled to one. *Miller* v. *Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000). Harris has not alleged that this is the case. An oral reprimand is not considered an adverse employment action unless accompanied by a change in the terms and conditions of Harris's employment. *Lloyd* v. *Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009). Harris has alleged that the oral reprimand limited her opportunities for advancement. More detail is not required.

### C. Discrimination Based on Race

Harris's § 1983 claim must be founded on an allegation that her suspension and termination was due to her race, as opposed to being retaliation for her complaints of racial discrimination. *See Boyd* v. *Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause."). Harris has made such an allegation: "Defendants' actual reason for terminating Ms. Harris' employment was retaliation for her protected activities and/or *her race or color*." First Am. Compl. ¶ 55 (emphasis added). While defendants argue that this allegation is conclusional, Harris need only provide defendants with sufficient notice to enable them to begin investigating her complaint. *See Tamayo*, 526 F.3d at 1084 ("[I]n order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex."); *E.E.O.C.* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 782 ("[O]nce a plaintiff

alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim."). This Harris has done.

### D. Section 1983 Statute of Limitations

Harris's § 1983 claims are governed by a two-year statute of limitations. *See Williams* v. *Lampe*, 399 F.3d 867, 870 (7th Cir. 2005); 735 Ill. Comp. Stat. 5/13-202. Harris concedes that her § 1983 claims against the individual defendants may be based only on events arising after May 21, 2007. Her suspension and termination occurred within this time period, and she alleges that Sigler, Denning, and Walker took these actions based on her race. Thus, Harris's § 1981 and § 1983 claims against the individual defendants in their individual capacities, as limited by the statute of limitations, survive scrutiny at this stage.

## II. State Law Claims

Harris brings four state law claims: retaliation in violation of the Illinois Human Rights Act (the "IHRA"), 775 Ill. Comp. Stat. 5/1 *et seq.* (Count III), the State Officials and Employees Ethics Act (the "Ethics Act"), 5 Ill. Comp. Stat. 430/1 *et seq.* (Count V), the Whistleblower Protection Act (the "Whistleblower Act"), 740 Ill. Comp. Stat. 174/1 *et seq.* (Count VI), and common law retaliatory discharge (Count VII).[5] Counts III and VII are asserted only against IDOC, while Counts V and VI are brought against all defendants. Defendants argue that all but Count V are barred by Illinois's State Lawsuit Immunity Act (the "Immunity Act"), 745 Ill. Comp. Stat. 5/1. Defendants further contend that Count V is preempted by the IHRA. Harris

---

[5] The retaliatory discharge claim is mislabeled as Count IX.

concedes that the retaliatory discharge claim must be dismissed without prejudice to refiling in the Illinois Court of Claims but maintains that the other claims are proper.

The Immunity Act provides that the State of Illinois (the "State") shall not be made a defendant in any court except as provided in specific laws, including the Court of Claims Act and the Ethics Act.[6] 745 Ill. Comp. Stat. 5/1. The Court of Claims Act provides that the Court of Claims has exclusive jurisdiction over certain actions, including those "against the State founded upon any law of the State of Illinois" and all cases sounding in tort if such a cause of action could be brought against a private person or corporation. 705 Ill. Comp. Stat. 505/8(a), (d).

### A.      The IHRA (Count III)

While the IHRA previously provided the Human Rights Commission with exclusive jurisdiction to hear civil rights claims, it was amended to allow a complainant to proceed in the appropriate circuit court after the Human Rights Commission dismisses charges filed with it after January 1, 2008. 775 Ill. Comp. Stat. 5/7A-102(C)(4), (K). Harris argues that this amendment indicates that the State has waived its sovereign immunity for IHRA claims asserted against it. A waiver of the state's sovereign immunity must be "clear and unequivocal." *In re Walker*, 546 N.E.2d 520, 522, 131 Ill. 2d 300, 137 Ill. Dec. 575 (1989) (quoting *Martin* v. *Giordano*, 450 N.E.2d 933, 934, 115 Ill. App. 3d 367, 71 Ill. Dec. 245 (1983)). It "must be expressed through specific legislative authorization and must appear in affirmative statutory language." *Id.* Where statutes are related, they are to be read harmoniously, with specific language taking

---

[6] State sovereign immunity rules apply to state law claims brought in federal court. *Richman* v. *Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001).

precedence over more general language. *Flynn* v. *Indus. Comm'n*, 813 N.E.2d 119, 125, 211 Ill. 2d 546, 286 Ill. Dec. 62 (2004).

The Immunity Act clearly provides that the State does not waive its immunity except as provided in certain other acts. The IHRA is not mentioned as an exception to the Immunity Act. *See Cook* v. *Ill. Dep't of Corr.*, No. 09-cv-0122-DRH, 2009 WL 2588871, at *1 (S.D. Ill. Aug. 20, 2009); *Neuman* v. *United States*, No. 07-CV-0362-MJR, 2008 WL 3285761, at *6 (S.D. Ill. Aug. 7, 2008). Further, nothing in the IHRA evinces an intent to override the Immunity Act. While suits brought under the IHRA may now proceed in circuit court, there is no clear, affirmative declaration in the IHRA or the Immunity Act that the State has waived its sovereign immunity for IHRA claims. *See People ex rel. Madigan* v. *Excavating & Lowboy Servs., Inc.*, 902 N.E.2d 1218, 1227–28, 388 Ill. App. 3d 554, 327 Ill. Dec. 832 (2009) (although the Environmental Act demonstrates an intent to hold accountable parties that commit environmental damage, including state entities, it does not contain an express waiver to sovereign immunity so as to override the Immunity Act); *cf.* 5 Ill. Comp. Stat. 315/25 ("For purposes of [the Illinois Labor Relations Act], the State of Illinois waives sovereign immunity."); 115 Ill. Comp. Stat. 5/19 ("For purposes of [the Illinois Educational Labor Relations Act], the State of Illinois waives sovereign immunity."). Thus, Count III must be dismissed without prejudice to refiling in the Illinois Court of Claims.

### B. The Whistleblower Act (Count VI)

The parties initially dispute whether a Whistleblower Act claim can be maintained against IDOC and the individual defendants. For an individual to be protected by the

Whistleblower Act, he or she must work for an "employer" as defined by the statute. A recent amendment to the Whistleblower Act, effective January 1, 2008, defined employer as

> an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, including a political subdivision of the State; a unit of local government; a school district, combination of school districts, or governing body of a joint agreement of any type formed by two or more school districts; a community college district, State college or university, or any State agency whose major function is providing educational services; any authority including a department, division, bureau, board, commission, or other agency of these entities; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees.

740 Ill. Comp. Stat. 174/5. Prior to this date, the Whistleblower Act specifically excluded any governmental entity from the definition. *See* 740 Ill. Comp. Stat. 745/5 (2005). The amendment is not retroactive. *See Norris* v. *City of Chicago*, No. 07 C 6776, 2008 WL 4277646, at *4–5 (N.D. Ill. Sept. 17, 2008).

At least two federal district courts have concluded, without discussion, that the State and its departments are included in the Whistleblower Act's definition of employer. *See Pratt* v. *McAnarney*, No. 08-3144, 2010 WL 2594745, at *7 (C.D. Ill. June 25, 2010); *Null* v. *Garnder*, No. 09-cv-1065, 2009 WL 2928144, at *8 (C.D. Ill. Sept. 9, 2009). The court is unaware of any state court decisions interpreting the amendment. It need not address defendants' argument that the amendment was only intended to allow for suit against municipalities and certain educational entities, for even assuming that the amendment includes the State as an employer, this court would not have jurisdiction over a Whistleblower Act claim against IDOC. As with the IHRA, the Whistleblower Act is not specifically mentioned as an exception to the State's immunity from suit in the Immunity Act nor is there any indication that the Illinois legislature intended to waive the State's sovereign immunity when expanding the Whistleblower Act's definition of

employer. *See Null*, 2009 WL 2928144, at *9. Thus, Harris may not proceed on her Whistleblower Act claim against IDOC in this court.

Harris contends that even if she cannot proceed against IDOC, she may proceed with her Whistleblower Act claim against the individual defendants. Defendants argue that the Whistleblower Act does not allow for suit against individual employees,[7] but this ignores the recent amendment, which includes within the definition of an employer "any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 Ill. Comp. Stat. 174/5. If IDOC is considered an employer, the individual defendants would be as well for any claims arising after January 1, 2008. Again, the court need not resolve the issue. Even assuming that the individual defendants are employers and not protected by sovereign immunity,[8] Harris has not stated a claim under the Whistleblower Act. All of her allegedly whistleblowing activities occurred prior to January 1, 2008. At the time she disclosed what she believed to be violations of state or federal law, rules, or regulations, the Whistleblower Act did not protect her from retaliation resulting from this disclosure. Harris

---

[7] Defendants rely on *Averett* v. *Chicago Patrolmen's Fed. Credit Union*, No. 06 C 4606, 2007 WL 952034, at *5 (N.D. Ill. Mar. 27, 2007), for the proposition that the Whistleblower Act does not provide a cause of action against individual defendants who are employed by the same employer as the plaintiff. *Averett*, however, was decided prior to the amendment to the definition of employer in the Whistleblower Act and only applies to pre-January 1, 2008 conduct.

[8] A claim against a state employee in his or her individual capacity is considered a claim against the state where "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Currie* v. *Lao*, 592 N.E.2d 977, 980, 148 Ill. 2d 151, 170 Ill. Dec. 297 (1992). Three factors generally establish that an action is against the state: "(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) . . . the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Jinkins* v. *Lee*, 807 N.E.2d 411, 418, 209 Ill. 2d 320, 282 Ill. Dec. 787 (2004) (quoting *Healy* v. *Vaupel*, 549 N.E.2d 1240, 1247, 133 Ill. 2d 295, 140 Ill. Dec. 368 (1990)). Sovereign immunity does not protect an individual defendant when he or she violated statutory or constitutional law, however. *Healy*, 549 N.E.2d at 1247.

has not alleged that her suspension and termination in December 2008 related to any whistleblowing activity that took place in 2008. Thus, she would not be able to take advantage of the protections of the Whistleblower Act. Harris is not without a remedy, however. Although she does not have a claim under the Whistleblower Act, as explained below, she does have a claim under the Ethics Act, a statute with provisions that mirror the Whistleblower Act and clearly apply to IDOC and the individual defendants.

## C. The Ethics Act (Count V)

Defendants argue that Count V is preempted by the IHRA. The Ethics Act prohibits retaliation based on a state employee's disclosure of an activity, policy, or practice that she reasonably believes violates a law, rule, or regulation. 5 Ill. Comp. Stat. 430/15-10. The IHRA prohibits retaliation based on an individual's opposition to what she believes is unlawful race discrimination, among other things. 775 Ill. Comp. Stat. 5/6-101(A). It provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in [the IHRA]." 775 Ill. Comp. Stat. 5/8-111(D). To the extent Count V is premised on Harris's reports of race discrimination, the IHRA preempts the claim and she cannot proceed under the Ethics Act.

Harris argues that Count V is also premised on her complaints regarding Gurgone kicking Weeden and the coverup that followed. Harris claims that various administrative directives and department rules were violated and that, by reporting the incident and coverup, she disclosed actions that she reasonably believed violated the law, rules, or regulations. These complaints, she contends, were independent of her complaints of race discrimination. Defendants argue that this claim is inextricably linked to Harris' race discrimination claim and

15

thus preempted. A claim is not inextricably linked to a civil rights violation "where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the [IHRA]." *Maksimovic* v. *Tsogalis*, 687 N.E.2d 21, 24, 177 Ill. 2d 511, 227 Ill. Dec. 98 (1997). Because the IHRA does not cover retaliation for the reporting of non-civil rights violations, such as the use of force on inmates and the reporting of serious incidents involving inmates as alleged here, Harris's claims regarding these issues are not preempted by the IHRA. *See Benjamin* v. *Ill. Dep't of Fin. & Prof'l Regulation*, 688 F. Supp. 2d 796, 804 (N.D. Ill. 2010) (an Ethics Act claim premised on a plaintiff's objection to ghost payrolling independent of complaints of race discrimination and retaliation was not preempted by the IHRA).

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss [#24] is granted in part and denied in part. Counts I and IV against IDOC and the individual defendants in their official capacities are dismissed. Counts III, VI, and VII are dismissed without prejudice to refiling in the Illinois Court of Claims. Count V is dismissed to the extent Harris is alleging retaliation for race discrimination. Defendants have until November 23, 2010 to answer the remaining counts of the complaint.

Dated: November 9, 2010        Enter: _____
                                      JOAN HUMPHREY LEFKOW
                                      United States District Judge